**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ELIZABETH HUFFMAN )<br>)<br>        Plaintiff, )<br>)<br>vs. )<br>)<br>STATE OF KANSAS DEPARTMENT OF CHILDREN )<br>AND FAMILIES f.k.a. THE KANSAS DEPARTMENT )<br>OF SOCIAL AND REHABILITATION SERVICES, *et al.* )<br>)<br>        Defendant. )<br>                                                    ) | Case No. 17-2250-JTM-GEB |

**<u>KANSAS OFFICE OF ADMINISTRATIVE HEARINGS DEFENDANTS'
MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS
2nd "FIRST AMENDED COMPLAINT" (DOC. 43)</u>**

Defendants Kansas Office of Administrative Hearings, Bob Corkins (OAH Director), Robert Tomlinson (former OAH Director) and Sharon Weidmaier (former OAH Office Manager) [all collectively OAH Defendants] submit this Memorandum of Law in Support of their Motion to Dismiss Elizabeth Huffman's second "First Amended Complaint" (Doc. 43).

**<u>PROCEDURAL HISTORY</u>**

Donna Huffman, an attorney, initially filed this action "as agent and representative of Jane Doe" under 42 U.S.C. §1983 (Doc. 1.)  OAH Defendants moved to dismiss, arguing among other things that because Jane Doe had then reached adulthood, Donna Huffman could not proceed on her behalf as next friend (Docs. 7, 8.)

On September 13, 2017, Elizabeth Huffman filed her first "First Amended Complaint," attempting to substitute herself as the new plaintiff, identifying herself as only as "L.E.H.," with Donna Huffman as her counsel of record.  On October 23, 2017, OAH Defendants moved to dismiss,

arguing that based upon several published Tenth Circuit cases directly on point, L.E.H. was not permitted to proceed pseudonymously without simultaneously filing a motion to request permission from the Court to do so (Docs. 21, 22.)  On February 12, 2018, L.E.H. responded, essentially denying there was any requirement for her to request permission (Doc. 32).  But then on March 8, 2018, L.E.H. filed a motion, essentially asking permission to proceed pseudonymously (Doc. 38).  On March 12, 2018, before defendants' had time to respond, the Court entered an order requiring L.E.H. "to file an amended complaint" under her real name.  (Doc. 41.)  The Court quoted from *Nat'l Commodity & Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989) that ""[a]bsent permission by the district court to proceed anonymously, . . . the federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them.""

This controlling complaint is now Elizabeth Huffman's (hereinafter L.E.H.) second "First Amended Complaint" (Doc. 43) (hereinafter Second Amended Complaint.).

## STATEMENT OF FACTS

The facts of this case have been set forth several times by defendants.  OAH Defendants, therefore, adopt and incorporate by reference all motions to dismiss filed by all defendants in this case, with the following additional explanation:

One of L.E.H.'s allegations is that she prevailed in a Kansas Open Records Act suit (#2014CV296) in Shawnee County District Court against OAH.  (Doc. 43, ¶¶ 28-30.)  For the Court's convenience, a copy of the order in that case is attached as Exhibit 1.  Huffman alleges she has not been provided the documents because OAH has been demanding "excessive payment for documents neither ordered nor requested under KORA until service of the instant action." (Doc. 43, ¶ 39.)  OAH has, in fact, written Huffman twice offering to provide the documents, and recently sent them to her at no charge, as is explained in the affidavit of Bob Corkins, attached as Exhibit 2.

## **LEGAL STANDARDS**

OAH Defendants adopt and incorporate by reference DCF Defendants' "Legal Standards" in pages 2 to 5 of their most recent Memorandum (Doc. 45, pp 2-5).

## **ARGUMENT AND AUTHORITIES**

### **I.     L.E.H. Lacks Standing to Challenge the State Proceedings Before OAH**

L.E.H. lacks standing to challenge the state proceedings before OAH, because she was not a proper party to those proceedings. The Kansas Court of Appeals has held that "there is no provision in the KAPA [Kansas Administrative Procedure Act] to allow a nonparty such as Twin Valley to initiate an appeal. K.S.A. 2005 Supp. 77-527(a) contemplates that only a party may petition for review. Similarly, only a party may file a petition for reconsideration. See K.S.A. 2005 Supp. 77-529(a)(1)." *Twin Valley Developmental Services, Inc. v. Kansas Dept. of Social and Rehabilitation Services*, 36 Kan.App.2d 865, 868 (2006). KAPA specifically identifies a party as "a person to whom an order is specifically directed; or (2) a person named as a party to a state agency proceeding, or allowed to intervene as a party in the proceeding." The court in *Twin Valley* elaborated on its ruling about standing by finding that, in addition to the appellant's status as a non-party, the appellant's claim was not an appealable matter because it concerns the exercise of the agency's investigatory discretion, reasoning that: "In addition, K.S.A. 77–508 clearly indicates that a hearing is not required for a decision whether to initiate an investigation or other proceeding before the state agency. Thus, even if SRS had chosen to investigate Twin Valley's claims further, it was not required to hold a hearing." *Id.*

In applying the *Twin Valley* precedent to this immediate case, it is clear that L.E.H. had no standing in the proceedings before OAH and, therefore, the original appeal never should have been allowed. The original appeal was filed by L.E.H., yet it challenged an agency determination – a finding that allegations were unsubstantiated – pertaining to Christopher Huffman and his conduct in

disciplining his child. Just as the court held about the appellant in Twin Valley, L.E.H. was not a proper party to the OAH proceedings and the basis of L.E.H.'s appeal was that the agency should have further pursued its investigation of Christopher Huffman. L.E.H. would no longer be allowed to bring such a challenge now, therefore she lacks standing to bring this action concerning the proceedings before OAH.[1]

## II. The *Rooker-Feldman* Doctrine Precludes Subject Matter Jurisdiction.

OAH Defendants adopt and incorporate by reference DCF Defendants' arguments in their most recent Memorandum that the court lacks Subject Matter Jurisdiction over L.E.H.'s action due to *Rooker-Feldman* doctrine (Doc. 45, pp 5-8).

## III. Res Judicata Prevents LEH from Relitigating Claims related to the Proceedings Before OAH.

OAH Defendants adopt and incorporate by reference DCF Defendants' arguments in their most recent Memorandum that *res judicata* prevents OAH from relitigating her claims. (Doc. 45, pp 8-9.) In the underlying litigation, *L.E.H. ex rel. D.L.H. v. Kansas Dept. of Social Rehabilitation Services*, 2015 WL 5036725, at *1 (Kan. Ct. of App. Aug. 21, 2015), Huffman raised due process issues, including alleged error by the Special Appeals Committee. While OAH was not a party to the litigation, like DCF, OAH is an agency of the state and OAH defendants are in privity with DCF.

## IV. OAH and OAH Employees Sued in Their Official Capacities are Entitled to Eleventh Amendment Immunity from Suits for Money Damages.

OAH Defendants adopt and incorporate by reference DCF Defendants' arguments concerning Eleventh Amendment Immunity as set forth in their (Doc. 45, pp 10-11). OAH is an

---

[1] Standing is a prerequisite to subject matter jurisdiction. *United States v. Ramos*, 695 F.3d 1035, 1046 (10th Cir. 2012). L.E.H.--the party invoking federal jurisdiction--has the burden of establishing the elements of standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

independent agency of the State of Kansas. *See* K.S.A. 77-561. As such, OAH is entitled to Eleventh Amendment immunity. OAH employees Corkins, Tomlinson, and Weidmaier are entitled to Eleventh Amendment Immunity in their official capacities.

### V.     Other Reasons OAH may not be Sued.

L.E.H may not bring a cause of action under 42 U.S.C. § 1983 against OAH because section 1983 expressly states that only "persons" can be sued, and states and state agencies are not persons for purposes of § 1983. *McLaughlin v. Bd. of Trs. of State Colls. of Colo*., 215 F.3d 1168, 1169 (10th Cir. 2000) (citing *Will v.Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). The express language of 42 U.S.C. § 1985 also only applies to "persons."

Pursuant to Fed. R. Civ. P. 17(b), the capacity of a party to be sued in federal court is to be determined by state law. Beginning with *Hopkins v. State*, 237 Kan. 601, 702 P.2d 311, 316 (1985) (holding Kansas Highway Patrol is not an entity subject to suit), it has become well-established under Kansas law that subdivisions, agencies, or departments of state governmental entities do not have the capacity to sue or be sued in the absence of a statute providing otherwise. Numerous federal cases recognize this doctrine. *See, e.g.,Tyson v. 18th Judicial  District Cour*t, No. 13-1026-MLB (D. Kan. 8/5/2013); *Adkins v. Kansas Comm'n on Judicial Qualifications,* No. 11–4109–SAC, 2011 WL 5024346 *3 (D. Kan., Oct. 20, 2011);  *Frank v. Bush,* No 09-4161 RDR, 2010 WL 1408405, *6 (D. Kan. , Apr. 2, 2010), *aff'd* , 391 Fed. Appx. 745 (10th Cir. 2010););  *Wright v. Wyandotte County Sheriff's Department*, 963 F. Supp. 1029, 1034 (D. Kan.1997); *Mason v. Twenty-Sixth Judicial Dist. of Kansas, Court Services Div*., 670 F. Supp. 1528, 1535 (D. Kan. 1987).

### VI. OAH Defendants Are Entitled to Absolute Judicial Immunity.

OAH Defendants are entitled to judicial immunity for their roles in the administrative process. Judicial immunity extends to administrative hearing officers. See *Cleavinger v. Saxner,* 474 U.S. 193, 200 (1985) (extending absolute immunity to federal hearing examiners and administrative law judges); *Tinner v. Foster*, No. 11-2695-EFM-KGG, 2012 WL 1473417, at *4 (D. Kan. Apr. 27, 2012); *Collins v. McClain*, 207 F.Supp.2d 1260, 1262 (D.Kan.2002) (judicial immunity extended to administrative hearing officers); *Hunt v. Lamb*, 2006 WL 2726808, *3 (D.Kan., Sept. 22, 2006) (same), appeal dismissed, 220 Fed.Appx. 887 (10th Cir., Apr. 4, 2007).

OAH provides presiding officers for State of Kansas administrative hearings, especially those under the Kansas Administrative Procedures Act. *See* K.S.A. 77-514. OAH and its employees are entitled to absolute judicial immunity**.**

### VII. OAH Defendants Are Entitled to Qualified Immunity.

Where a defendant asserts a qualified-immunity defense, the burden shifts to the plaintiff to submit sufficient evidence showing (1) the violation of a constitutional right that (2) was clearly established at the time of the violation. *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011). Courts may decide which of these prongs to address first, and a plaintiff's failure to address either is fatal to a plaintiff's claim. *See Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 n.2 (10th Cir. 2009). To meet the "heavy, two-part burden" necessary to overcome a qualified-immunity defense, a plaintiff must allege facts sufficient to show a constitutional violation, and those facts must find support from admissible evidence in the record. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015) (internal quotation marks omitted).

Having raised qualified immunity, the burden now shifts to L.E.H. But specifically, as to L.E.H.'s allegations of handling the administrative case, as noted, L.E.H. was not a proper party

to the case nor did she raise a justiciable claim, so she has stated no constitutional violation concerning OAH's handling of the case. Put more broadly, as is stated in DCF's Memorandum at page 14, DCF's duty was to the public at large, not to the alleged abused child or the alleged abuser. Likewise, OAH's duty is to the public at large, not to the alleged abused child.

Concerning L.E.H.'s allegations about alleged violations of the Kansas Open Records Act (KORA), KORA is a state statute. Section 1983 does not apply to violation of state statutes. *Rector v. City & County of Denver*, 348 F.3d 935, 947-48 (10th Cir. 2003). To the extent that L.E.H. alleges that OAH has violated her due process rights by failing to comply with the state district court's KORA order by including too many documents thereby raising the cost, L.E.H. does not explain whether she is alleging a violation of procedural due process or substantive due process. She does not allege she has a property right in the documents.

If her allegations concern procedural due process, she is required to prove that state procedure bars her claims for violation of the KORA court's order. *See e.g. Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1273 (10th Cir. 2002). L.E.H. is free to return to state court to enforce her rights.

If L.E.H. is alleging substantive due process, she must allege conduct of such a magnitude that it "shocks the conscious of federal judges." *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995) (internal quotations and citations omitted.). "The Due Process Clause 'is not a guarantee against incorrect or ill-advised [government] decisions." *Id.* To the extent that the Court would find that L.E.H. has a property interest in the documents, OAH's alleged inclusion of documents that L.E.H. finds unnecessary is not conduct that would rise to the level of shocking the conscious.[2]

---

[2] As is noted later in this Memorandum, this issue is moot because OAH has provided all the documents to L.E.H. free of charge.

### VIII.     Any Applicable Statute of Limitations has Expired.

L.E.H. purports to proceed pursuant to K.S.A. 60-515 which she argues allows her to "reach back to recover for all conduct and damages as at the time of the first cause of action accrued was a minor . . . within a  year of turning 18 years of age."  (Doc. 43, p. 2, ¶ 5.)

L.E.H. fails to plead any facts that would establish her right to proceed under K.S.A. 60-515.  FRCP 5.2 prevents this counsel from providing L.E.H.'s precise birth date in a publically filed document.  Suffice it to say, that upon information and belief, much more than one year transpired between L.E.H.'s eighteenth birthday and the filing of the second Amended Complaint using L.E.H.'s full name on March 20, 2018 (Doc. 43).[3]  As was noted in this Court's order directing L.E.H. to file an amended complaint under her real name, "a case has not been commenced" as to her until she did so.

The statute of limitations on L.E.H.'s 42 USC § 1983 and § 1985 claims is two years. *Jacobs v. Lyon Cnty. Detention Ctr.*, 371 Fed.Appx. 910, 912 (10th Cir. 2010) (citing K.S.A. 60-513(a)(4)); *Alexander v. Oklahoma*, 382 F.3d 1206, 1212 (10th Cir.).

Likewise, the statute of limitations for negligent and intentional infliction of emotional distress is two years pursuant to K.S.A. 60-513(4*). Home Quest Mortg., L.L.C. v. Am. Family Mut. Ins. Co.*, 393 F. Supp. 2d 1096, 1099 (D. Kan. 2005).  To the extent that L.E.H. attempts to state a claim just for "negligence" (Doc. 43, pp 25-27), the same statute of limitations applies.

### IX.     L.E.H. Fails to State a Cause of Action under 42 U.S.C. §§ 1985(2) or 1985(3).

L.E.H. attempts to assert "deterrence" cause of action under 42 U.S.C. § 1985(2).  To establish a conspiracy claim under 42 U.S.C. § 1985(2), a plaintiff must prove three elements:

> (1) a conspiracy, (2) to deter attendance in court or testimony by force or intimidation or to injure a witness for having appeared in court or testified, and

---

[3] If L.E.H. disputes this, she should be required to plead facts establishing her right to proceed under K.S.A. 60-515

> (3) injury to the plaintiff." *Hogan v. Winder*, 762 F.3d 1096, 1113 (10th Cir. 2014). "The first element, a conspiracy, requires the combination of two or more persons acting in concert. A plaintiff must allege, either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants. The conspiracy must be one that has the requisite statutory purpose....

*Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126 (10th Cir. 1994) (brackets, citations, and internal quotation marks omitted). L.E.H. makes no allegations of force or intimidation to prevent her from testifying. Moreover, it is not at all clear that a section 1985(2) claim could be successfully maintained as to a state investigation or stated quasi-judicial administrative hearing, since section 1984(2) expressly used the word "court."

L.E.H. also alleges a violation of 42 U.S.C. § 1985(3). The Tenth Circuit has said of both § 1985(2) and § 1985(3):

> Among other elements, both causes of action require a showing of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *see also Murray v. City of Sapulpa*, 45 F.3d 1417, 1423 (10th Cir.1995); *Smith v. Yellow Freight Sys., Inc.*, 536 F.2d 1320, 1323 (10th Cir.1976). The focus of the racial animus inquiry is the government actor's "intent, motive, or purpose." *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 647 (10th Cir.1988). To avoid summary judgment, Plaintiffs must point to "specific, nonconclusory evidence" that the Defendants' actions were "improperly motivated." Id. at 650.

*Jones v. Norton*, 809 F.3d 564, 578 (10th Cir. 2015). *See also, Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1225 n. 13 (10th Cir.2006).

A 1985 plaintiff must plead specific facts tending to show agreement and concerted action between the alleged conspirators. *See Phelps v. Wichita Eagle–Beacon*, 886 F.2d 1262, 1272 (10th Cir.1989). Conclusory statements are insufficient. *See Brooks v. Gaenzle*, 614 F.3d 1213, 1228 (10th Cir.2010); *Scott v. Hern*, 216 F.3d 897, 907 (10th Cir.2000); *Sooner Products Co. v. McBride*, 708 F.2d 510, 512 (10th Cir.1983). "Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker ...

selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group. " *Bray*, 506 U.S. at 271–2, (internal quotation marks and citation omitted). Further, the conspiracy must be "aimed at interfering with rights that are protected against private, as well as official, encroachment." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993); *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). L.E.H. makes no allegations sufficient to establish a meeting of the minds for purposes of a conspiracy.

A class, under 42 USC 1985, must be a protected class. *Silkwood v. Kerr–McGee Corp.*, 637 F.2d 743, 746 (10th Cir.1980). The other "class-based animus" language of this requirement has been narrowly construed and does not, for example, reach conspiracies motivated by an economic or commercial bias. *Tilton*, 6 F.3d at 686. L.E.H.'s allegation of class is "unequal treatment under the laws for children of state employees . . .." (Doc. 43, p. 18, ¶ 84.) 42 U.S.C. § 1985 was enacted as part of the Civil Rights Act of 1871. It was not intended to create "a general federal tort law . . ." *Griffin*, 403 U.S. at 102. "The Tenth Circuit has rejected a variety of attempts to more loosely define a class, including teachers,[59] handicapped persons,[60] and those with similar political beliefs or expressions.[61]" *King v. Knoll*, 399 F. Supp. 2d 1169, 1180 (D. Kan. 2005) (citing in footnotes as follows: [59]*Pitts v. Bd. of Educ. of U.S.D. 305, Salina, Kan.*, 869 F.2d 555, 557 (10th Cir.1989); [60]*Wilhelm v. Continental Title Co.*, 720 F.2d 1173, 1176 (10th Cir.1983), cert. denied, 465 U.S. 1103; [61]*Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir.1985)).

Children of state employees are not the type of class that 42 USC § 1985 was designed to cover, and to suggest otherwise demeans the Civil Rights Act of 1871. Moreover, L.E.H. alleges no facts that indicate an intent of defendants to target L.E.H. because she is the child of a state employee.

### X.     L.E.H. has been Provided with the Documents so her KORA Claims are Moot.

As noted in the Statement of Facts, attached as Exhibit 2 is an affidavit of Bob Corkins. Corkins provides copies of two letters he sent to Huffman offering her the records. His affidavit states that most recently, he mailed her all the records free of charge.

L.E.H.'s claim that she has not received the records she requested is moot. "[A]n actual controversy must be extant at all stages of review, not merely at the time the [case] is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67, (1997) (quotation marks omitted). A court has no subject matter jurisdiction when a case is moot. *Rio Grande Silvery Minnow v. Bureau of Reclamation,* 601 F.3d 1096, 1109 (10th Cir.2010) "We have no subject-matter jurisdiction if a case is moot." *United States v. Wiles*, No. 16-8074, 2018 WL 576206, at *4 (10th Cir. Jan. 26, 2018).[4]

### XI.    The Court Should Dismiss L.E.H.'s State Law Claims or, in the Alternative, Decline to Exercise Jurisdiction over them.

L.E.H. attempts to assert a cause of action under the Kansas Consumer Protection Act ("KCPA"), and for negligence, negligent infliction of emotional distress and/or intentional infliction of emotional distress. Not only are these causes of action barred by the statute of limitations, L.E.H. fails to plead facts sufficient to satisfy either cause of action. The Court could decline to exercise supplemental jurisdiction over L.E.H.'s state law causes of action. Whether to try state claims in the absence of triable federal claim is discretionary, but the court should consider "the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness" when deciding whether to retain jurisdiction. *Anglemyer v. Hamilton Cnty. Hosp.*,

---

[4] In a factual attack to subject matter jurisdiction, the court has wide discretion to allow matters outside the pleadings to resolve jurisdiction. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

58 F.3d 533, 541 (10th Cir. 1995). But the shallowness of L.E.H.'s state law claims beg for dismissal with prejudice in the interests of fairness to the defendants—enough is enough.

As previously noted, OAH does not have the power to be sued, so all state law claims against it must be dismissed.

L.E.H. alleges OAH violated various provisions of the Kansas Consumer Protection Act ("KCPA"). OAH adopts and incorporates by reference DCF's arguments concerning the KCPA as set forth in DCF Defendants' Memorandum (Doc. 45, pp. 15-17). L.E.H. is not a "consumer," OAH is not a "supplier," there has been no "consumer transaction," and the statute of limitations has run.

As to L.E.H.'s intentional infliction of emotional distress claims, under Kansas law, the tort of intentional infliction of emotional distress requires the proof of four elements: "(1) [t]he conduct of defendant must be intentional or in reckless disregard of plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress must be extreme and severe. *Roberts v. Saylor*, 230 Kan. 289, 293 (1981). "Emotional distress passes under various names such as mental suffering, mental anguish, nervous shock, and includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, embarrassment, anger, chagrin, disappointment, and worry. However, it is only when emotional distress is extreme that possible liability arises." *Id.* While "no laundry list of what qualifies as the requisite level of severity" exists, "headaches, sleeplessness, irritability, anxiety, depression, listlessness, lethargy, intermittent nightmares, and the like would probably not suffice." *Dana v. Heartland Mgmt. Co., Inc.*, 48 Kan. App. 2d 1048, 1059 (2013) (quotations omitted).

L.E.H. makes no allegations of such extreme mental distress. She only alleges in a conclusory manner "pain and suffering both physical and emotional" and "vomiting and night terrors." (Doc. 43 p. 29-30, ¶ 134.) These conclusory allegations are not enough. *See, e.g.*, *Lee v. Reed*, 221 F. Supp. 3d 1263, 1274 (D. Kan. 2016) (dismissing complaint that alleged plaintiff "suffered extreme emotional distress, embarrassment, shame, humiliation and severe depression"); *Star Cent. Gas Pipeline, Inc. v. Cline*, 754 F. Supp. 2d 1257, 1265 (D. Kan. 2010) (recognizing factual allegations that plaintiff experienced helplessness, vulnerability, and stress, without more, as insufficient as a matter of law to state a claim for intentional infliction of emotional distress); *McIlrath v. City of Kingman*, 324 P.3d 343 (Kan. Ct. App. 2014) (unpublished) (holding that, without more, allegations that defendants caused "physical and emotional damage and caused [plaintiffs] to be extremely anxious, fearful, extremely agitated, extremely upset, and extremely fearful," were insufficient to state a claim for intentional infliction of emotional distress).

The OAH Defendants' conduct as alleged by L.E.H. does not possibly rise to the level of outrageous conduct. She vaguely refers to a "fake order." She refers to failure to comply with the Kansas Open Records Act. Nothing alleged meets the high standard necessary for intentional infliction of emotional distress.

L.E.H. alleges, alternatively, a claim for negligent infliction of emotional distress. Under Kansas law,

> a plaintiff cannot recover for emotional distress caused by the defendant's negligence unless that emotional distress is accompanied by or results in physical injury to the plaintiff. The qualifying physical injury must directly result from the emotional distress allegedly caused by the defendant's negligence and must appear within a short span of time after the emotional disturbance. . . . Generalized physical symptoms of emotional distress such as those associated with post-traumatic stress disorder are insufficient to state a cause of action for negligent infliction of emotional distress.

*Majors v. Hillebrand*, 51 Kan. App. 2d 625, Syl. ¶¶ 1, 2(2015).  L.E.H. makes no such allegations.

L.E.H. then throws in a kitchen sink negligence claim—training supervision, failure to follow procedures, record retention, and misrepresentation.  In a rambling narrative, and in a conclusory fashion, she discusses a list of perceived wrongs she has suffered, making no attempt to tie them to elements of her various negligence theories.  She again fails to meet the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and its progeny.

L.E.H.'s state law claims are precluded by the Tort Claims Act because they are subject to an exclusion from the KTCA. *Carpenter v. Johnson*, 231 Kan. 783, 786 (1982) ("An exception written into a tort claims act constitutes a jurisdictional bar, if established."). K.S.A. 2015 Supp. 75-6104(b) provides that a governmental entity shall not be liable for damages resulting from judicial function.  Generally, under K.S.A. 2017 Supp. 75-6104(b), a judicial function is distinguished from a ministerial act because it involves the exercise of judgment, discretion, discernment, or discrimination.  *Cook v. City of Topeka*, 232 Kan. 334, 337 (1982).  Tort claims judicial function immunity applies to administrative hearing officers.  *Garrett v. Sawyer*, 27 Kan. App. 2d 594, 596 (2000).  Here, the acts L.E.H. complains of as to the conduct of the administrative hearings exhibit the hallmarks of judicial power, requiring the exercise of judgment and discretion.

L.E.H.'s state law claims are also precluded by Judges are protected by common-law judicial immunity:  "[J]udges are immune for damages for acts committed within their judicial jurisdiction." *Smith v. State*, 264 Kan. 348, 361 (1998); *see also Mireles v. Waco*, 502 U.S. 9, 11, (1991) ("judicial immunity is an immunity from suit, not just from ultimate assessment of damages"); *Jarvis v. Drake*, 250 Kan. 645, (1992) ("Judicial immunity is a long and firmly

established common-law rule."); *Knight v. Neodesha, Kan., Police Dep't*, 5 Kan. App. 2d 472, 477 (1980).

## CONCLUSION

It is time for this case to end.  This case was filed almost a year ago, and we are now on the third complaint, with all complaints riddled with fatal legal defects.  L.E.H. is not proceeding pro se, and there should be no reason for her to be offered another chance to file an amended complaint.  L.E.H.'s attorney has had notice of many of defendants' defenses because they were included in their prior motions to dismiss, yet counsel elected to proceed with many of the same original allegations and claims.

For the reasons state herein and in DCF Defendants' Motion to Dismiss and Memorandum, OAH Defendants request this action be dismissed with prejudice.

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

s/ Stephen Phillips
Stephen Phillips, KS Sup. Ct. No. 14130
Assistant Attorney General
Memorial Bldg., 2nd Floor
120 SW 10th Avenue
Topeka, Kansas 66612-1597
Tel: (785) 296-2215;   Fax: (785) 291-3767
Email: steve.phillips@ag.ks.gov
*Attorney for Defendants* Office of Administrative Hearings, Bob Corkins, Robert Tomlinson, and Sharon Weidmaier

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of April, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all those individuals currently electronically registered with the Court, and that on this same date, I mailed the foregoing *via* first class U.S. Mail, postage prepaid, addressed to:

                                              s/ Stephen Phillips
                                              Stephen Phillips
                                              Assistant Attorney General